ROBERT H. INGERSOLL et al., trading, &c.,

*v.*

SAM GOLDSTEIN.

[Submitted February 3d, 1915.   Decided February 19th, 1915.]

1. At common law, where the vendor sells his whole interest or property in chattels, with conditions restricting the sale thereof, the title passes, but the conditions, being against public policy, are void.

2. Act April 1st, 1913 (*P. L. p. 377*), forbidding merchants from discriminating goods of any maker by depreciating the value of such products, &c., is in derogation of the common law, and must be strictly construed.

3. Under act April 1st, 1913 (*P. L. 377*), forbidding merchants from discriminating against goods of any maker by depreciating the value of such products, &c., except in cases where the goods do not "carry any notice prohibiting such practice," a notice in an Ingersoll watch, under the heading "License," forbidding a sale at less than the price therein fixed, but not in terms prohibiting the practice denounced by the statute, is insufficient.

Heard on bill, answer and replication.

*Mr. George L. Record,* for the complainants.

*Mr. J. Emil Walscheid,* for the defendant.

GRIFFIN, V. C.

The bill in this cause, among other things, alleges that the complainants are manufacturers and dealers in watches, widely advertised throughout the country as Ingersoll watches and sold under certain trade names, viz.: the Ingersoll Eclipse Watch, the Ingersoll Junior Watch, and the Ingersoll Dollar Watch, the latter being also known in the trade as the Yankee Watch. The bill charges that large sums of money have been expended by the complainants in advertising; that in all the advertising these watches are announced on sale at retail, the Dollar Watch

at $1.00; the Eclipse Watch at $1.50; and the Junior Watch at $2.00. The bill is framed under chapter 210 of the laws of 1913, page 377. The statute without its title and enacting clause, is as follows:

1. It shall be unlawful for any merchant, firm or corporation, for the purpose of attracting trade for other goods, to appropriate for his or their own ends a name, brand, trade-mark, reputation or good will of any maker in whose product said merchant, firm or corporation deals, or to discriminate against the same, by depreciating the value of such products in the public mind, or by misrepresentation as to value or quality, or—by—price inducement, or by unfair discrimination between buyers, or in any other manner whatsoever, except in cases where said goods do not carry any notice prohibiting such practice, and excepting in case of a receiver's sale, or a sale by a concern going out of business.

2. Any person, firm or corporation violating this act shall be liable at the suit of the maker of such branded or trade-marked goods, or any other injured person, to an injunction against such practices, and shall be liable in such suit for all damages directly or indirectly caused to the maker by such practices, which said damages may be increased threefold, in the discretion of the court.

3. This act shall take effect immediately.

Approved April 1st, 1913.

For the purpose of this case I find that the bill alleges a perfect right against the defendant, provided the notice is as prescribed by the statute. It is as follows:

LICENSE.

ROBT. H. INGERSOLL & BRO., MAKERS.

New York, Chicago, London, San Francisco.

Mechanism in this watch is covered by United States Patents and the watch is licensed and sold under and subject to the following conditions assented to by purchase and controlling all sales and uses thereof, any violation of which license conditions revokes and terminates all rights and licenses as to this and all other watches of makers in violator's possession and subjects the violator to suit for infringement of said letters patent.

(1) Jobbers may sell only to retail dealers, may not sell to anyone designated by makers as objectionable, may not detach or sell without this notice and may sell only at rates specified in schedules furnished by makers.

(2) Retailers may advertise and sell only to buyers for use at ONE DOLLAR.

(3) No donation, discount, rebate, premium or bonus may be allowed or given in connection with any sale at wholesale or retail.

(4) It will not be offered as a premium or bonus for or in connection with the sale of other goods; or included in any combined sale.

(5) Guarantee with date of sale endorsed thereon to accompany each watch.

INGERSOLL

DOLLAR WATCH.

Trade Mark Reg. U. S. Pat. Off.

Nickel Finish.      Arabic.

The foregoing is a copy of the notice carried with the Ingersoll Dollar Watch. Similar notices were carried with the other watches, the only change being the substitution of the price at which they were to be sold for the words "One Dollar."

The prayer of the bill is that the defendant be restrained "from advertising for sale or from selling any of the watches of the complainants at a less price than that advertised as the price to the consumer by your orators."

The defendant, by a pleading styled an answer, but which is really a demurrer, sets up the following defence:

"That this defendant admits the allegations in the said bill of complaint contained, but denies that the facts therein stated entitled the complainants to the relief prayed for in the said bill of complaint, and this defendant hopes he shall have the same benefit of this defence as if he had demurred to the said complainants' bill."

In the absence of the statute, it is quite clear that the complainant could not obtain relief in this court under its bill, because at common law, where the vendor sells his whole interest or property in chattels, with conditions restricting the sale thereof, the title passes, but the conditions, being against public policy, are void. *Dr. Miles Medical Co.* v. *John D. Park & Sons Co., 220 U. S. 373;* citing Lord Coke, *2 Coke on Littleton,* § *360; Bauer & Cie* v. *O'Donnell, 229 U. S. 1.*

By the statute under consideration, the legislature has modified this common law rule of public policy, setting up a new standard of business morals, but the standard thus fixed, being in derogation of the common law, the statute must be strictly construed. *Compton* v. *Pierson, 28 N. J. Eq. 229, 231; Tinsman* v. *Belvidere and Delaware Railroad Co., 26 N. J. Law 148, 166; Shields* v. *Lozear, 34 N. J. Law 496; Eayre* v. *Earl, 8 N. J. Law 359–362; Sinnickson* v. *Johnson, 17 N. J. Law 120, 144.*

The rule is very plainly stated in *Sinnickson* v. *Johnson,* *supra,* as follows: "It is the well settled rule, that statutes in derogation of common law rights are to be strictly construed; and we are not to infer that the legislature intended to alter the common law principles, otherwise than is clearly expressed." Citing *11 Mod. 149.*

In *Eayre* v. *Earl, supra,* the case called for a consideration of the act abolishing imprisonment for debt; the action was against the sheriff for escape. The act provided that the bond taken should be "in double the sum for which" the defendant was "arrested or taken in execution." The defendant was taken in execution for the costs as well as the debt, yet the bond was taken in double the amount of the latter only; the court said, "This statute introduces a new principle in derogation of the common law, and in the statute itself, and by a strict compliance with its enactments the officer must find his 'protection,'" and entered judgment against the sheriff for a voluntary escape.

Construing this statute in the light of the foregoing decisions, the first question to be settled is, Did the goods, *i. e.,* the watches referred to in the bill, "carry any notice prohibiting such practice," *i. e.,* the practice condemned by the act?

Under the statute, to afford relief, not only must the merchant and others therein mentioned "appropriate for their own ends a name, trade-mark," &c., or to do other things denounced in the first section, "for the purpose of attracting trade for other goods," but the goods of the merchant must carry a notice "prohibiting such practice."

There was carried with these watches the notice above-mentioned (called a license); this notice, however, does not in terms prohibit the practice denounced, but, on the contrary, it forbids under certain penalties the sale under all conditions at a price less than that fixed; the notice is too broad; it, in fact, forbids a sale to which the act has no application. Therefore, construing the statute in the light of the above decisions, I must find that the watches did not "carry any notice prohibiting" the practice condemned by the statute, and will advise a decree dismissing the bill.